COMMERCIAL UNION INSURANCE
COMPANY, Appellant,

v.

SPAW–GLASS CORPORATION, INC.,
a/k/a Spaw–Glass Holdings, Inc., a/k/a
Spaw–Glass Cahaba, S.A., Appellee.

No. 3–93–517–CV.

Court of Appeals of Texas,
Austin.

June 8, 1994.

Rehearing Overruled July 6, 1994.

David L. Brenner, Wilson, Grosenheider & Burns, Austin, for appellant.

Susan P. Burton, Clark, Thomas & Winters, Austin, for appellee.

Before ABOUSSIE, KIDD and B.A. SMITH, JJ.

BEA ANN SMITH, Justice.

Appellee Spaw–Glass Corporation, Inc. contracted with Judson Independent School District to complete construction of Judson High School in San Antonio. Appellant Commercial Union Insurance Company was the surety for Kleck Plumbing HVAC, a subcontractor on the project whose default left certain suppliers unpaid. To mitigate damages under its performance and payment bonds, Commercial Union funded Kleck's remaining obligations under its contract. Commercial Union expected to recover these expenditures from the ten percent retainage Spaw–Glass was required to withhold from Kleck under their contract. Spaw–Glass, however, released substantial portions of Kleck's retention upon completion of the first phase of the project, making the final payment from retention after completion of the second phase approximately $100,000 less than the obligations Commercial Union had funded.

Commercial Union sued Spaw–Glass, claiming to be a third-party beneficiary of the contract between Spaw–Glass and Kleck. Commercial Union claimed that Spaw–Glass' breach of its contractual obligation to retain ten percent of the total contract price until final completion of the project caused Commercial Union to sustain $100,000 in damages. The case was submitted to the court on an agreed statement of facts. The trial court held that Commercial Union had no legal or equitable claim against Spaw–Glass. We will affirm the trial court's judgment.

## BACKGROUND

The agreed statement of facts reflects that Spaw–Glass contracted to complete construction of the high school in March 1987; later that month it signed a contract with Kleck, as a subcontractor, for work totalling $1,188,-814. Under the subcontract, Spaw–Glass was required to retain ten percent of the payments due Kleck until completion of the project. A second phase of the project was added in July 1987. Rather than execute a new contract, which would have required the school district to conduct a bidding process, the parties executed a change order to cover the addition. The addition increased the value of Kleck's work under the contract to $1,843,585. In exchange for executing the change order, the school district agreed to release to Spaw–Glass retainage for the original phase of the project before completion of the second phase. Spaw–Glass in turn released retainage from the first phase to subcontractors who were performing adequately. Kleck received retention payments of $70,-883.90 on October 9, 1987, and $66,833.90 on November 5, 1987. On September 22, 1988, Kleck signed a certification that all suppliers had been paid; on September 29, 1988, it signed a final release and received the final retention payment. At this time Spaw–Glass was unaware that Kleck had unpaid obligations on the project and Commercial Union was unaware of the earlier retention payments. The final retention payment due Kleck was only $43,210.23, approximately $100,000 less than the obligations funded by Commercial Union. Disappointed that it could not recover its expenditures from Kleck's retention, Commercial Union sued Spaw–Glass in July 1989, seeking to recover its damages as a third-party beneficiary of the subcontract.

## DISCUSSION

### Standard of Review

■ When a case is submitted to the trial court on an agreed statement of facts, the judgment will be upheld on appeal if it can be sustained on any legal theory supported by the evidence. *WesTech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 196 (Tex.App.—Austin 1992, no writ).

### The McGregor Act

■ In its third point of error, Commercial Union attacks the trial court's holding that this action is governed by the McGregor Act. *See* Act of May 20, 1977, 65th Leg., R.S., ch. 809, § 1, art. 5160(A), 1977 Tex.Gen. Laws 2027, 2027 (Tex.Rev.Civ.Stat.Ann. art. 5160, since amended and repealed) ("Article 5160"). We will address this contention first, as it affects our review of the other points of error. The McGregor Act provides a comprehensive and exclusive statutory scheme requiring prime contractors on public projects exceeding $25,000 in cost to purchase both a performance bond to protect the public entity owning the project and a payment bond to protect suppliers of labor or materials. Article 5160 A. There is no dispute that the Act governs unpaid claims of suppliers brought against the prime contractor and its surety. Commercial Union argues that the McGregor Act does not govern claims of a subcontractor's surety brought against the contractor, and hence its provisions are irrelevant to this suit on a contract. We note that the trial court did not hold that the McGregor Act governs Commercial Union's claim. Rather, the trial court held that *Kleck's suppliers* were required to give notice of their unpaid bills to Spaw–Glass and that they failed to do so. We will uphold the trial court's decision that the notice provisions of the McGregor Act governed the claims of Kleck's suppliers.

The McGregor Act requires unpaid claimants to give timely notice of their unpaid claims to the prime contractor. Article 5160 B(a). Kleck's unpaid suppliers did not give Spaw–Glass the statutorily required notice. The provisions of the Act must be strictly complied with if there is to be recovery from a payment bond; furthermore, the Act provides the exclusive remedy for laborers or suppliers on a public project. *Bunch Elec. Co. v. Tex–Craft Builders, Inc.*, 480 S.W.2d 42, 45 (Tex.Civ.App.—Tyler 1972, no writ). If Spaw–Glass had no liability to the unpaid suppliers because they failed to give notice, Commercial Union had no obligation under the payment bond to the unpaid suppliers. Spaw–Glass thus argues that Commercial Union *voluntarily* paid the suppliers who did not comply with the exclusive statutory scheme for asserting their unpaid claims against the prime contractor.

The statute refers to "claimants who do not have a direct contractual relationship with the prime contractor." Article 5160 B(b). The Act defines a claimant as "anyone having direct contractual relationship with the Prime Contractor, or with a subcontractor, to perform the work or a part of the work, or to furnish labor or materials or both." Article 5160 C. The Act requires that a claimant give notice to the contractor; in fact, the Act requires both notice of unpaid claims and notice of any retainage agreement between a subcontractor and a supplier. The purpose of these notices is to protect the prime contractor from incurring double liability. Before the 1959 amendments adding notice provisions to the statute, a contractor might pay a subcontractor in full, "only to find subsequently that a claim had been filed with the County Clerk by a person or persons who had dealt only with the subcontractor. Thus the prime contractor or his surety would have to pay the same debt twice." *Keetch Metal Works of Dallas, Inc. v. Yates*, 378 S.W.2d 122, 124 (Tex.Civ.App.—Dallas 1964, no writ). To correct this problem, the legislature amended the statute to remove the contractor's liability for claims not asserted before retainage is paid in full. Article 5160 B(b), (c). To impose liability on the contractor in the present cause would reinstate the very evil the notice requirements were enacted to eliminate. The trial court properly denied Commercial Union's attempt to be reimbursed for paying claims that the contractor was not liable to pay under the McGregor Act. We overrule the third point of error.

## Contractual Duty

■ In its first point of error, Commercial Union asserts that the trial court erred in finding that Spaw–Glass owed no contractual duty to Commercial Union to withhold retention payments to Kleck. Point of error two complains that the court erred in denying recovery when the evidence showed that Spaw–Glass' breach caused Commercial Union damages of $100,000 plus attorney's fees. The trial court filed conclusions of law that Commercial Union was not a third-party beneficiary of the contract between Spaw–Glass and Kleck, that Spaw–Glass had no contractual or other legal duty to Commercial Union to withhold all retention payments until final completion of the project, and that the evidence did not support the damages claim as the entire retention would have been released to Kleck because Spaw–Glass had no notice of unpaid claims.

Commercial Union's claim as a third-party beneficiary of the contract between Spaw–Glass and Kleck rests on a mirror image theory: because Spaw–Glass was the beneficiary of the bond contract between Kleck and its surety, Kleck's surety must then be a beneficiary of the construction contract between Kleck and Spaw–Glass. This theory, while symmetrical, ignores the reality of the legal relationships created by these two agreements. Spaw–Glass had certain duties to Kleck under the subcontract; it also had certain obligations to Kleck's suppliers if Kleck defaulted. Kleck was required to protect Spaw–Glass by obtaining bonds to guarantee its performance and the payment of its suppliers; it entered into an agreement with Commercial Union to supply these bonds. Neither of these contracts created any legal duty running from Spaw–Glass to Commercial Union. Rather, Kleck purchased such bonds from Commercial Union *for the benefit of Spaw–Glass* and for the benefit of Kleck's suppliers. The performance bond specifies that "[n]o right of action shall accrue on this bond to or for the use of any person or corporation other than [Spaw–Glass]." If suit is brought to collect on the payment bond, it specifies that "[Spaw–Glass] shall not be liable for the payment of any costs or expense of any such suit."

Commercial Union relies on two earlier opinions dealing with breach of retainage agreements to support its theory of contractual liability. In *Aetna Casualty & Surety Co. v. Robertson Lumber Co.*, 3 S.W.2d 895 (Tex.Civ.App.—Waco 1928, no writ), a surety sued a city that had paid retainage early; the court held that this breach of the city's contractual obligation relieved the surety of its liability to the city on the performance bond and allowed the surety to collect from the city the money it had to pay out on the payment bonds. The court found it "unimportant" that the city had no notice of unpaid claims at the time it paid out the retainage. *Id.* at 899. We note that this 1928 case predated the notice requirements enacted in the McGregor Act in 1959.

In *Friendswood Independent School District v. National Surety Corp.*, 423 S.W.2d 95, 99 (Tex.Civ.App.—Houston [14th Dist.] 1967), *rev'd in part, aff'd in part*, 433 S.W.2d 690 (Tex.1968), the court relied on *Aetna* to hold that a school district's unauthorized payment of retainage gave the surety a valid claim against the district for money it had been required to pay to suppliers. The opinion does not discuss the mandatory notice provisions enacted in 1959 that might distinguish the case from the *Aetna* holding. However, the jury in *Friendswood* found that the school district *did* know of the unpaid claims before it paid out retainage to the contractor. *Id.* at 98. Another distinguishing factor was that the contractor in *Friendswood* did *not* give a certification or final release as evidence that all suppliers had been paid, as was given in this cause. *Id.* at 99. We believe that, after 1959, a prime contractor who receives no notice of retainage agreements between subcontractors and suppliers and no notice of suppliers' unpaid claims has no duty to pay those claims or to reimburse anyone who does. We overrule the first point of error.

The second point of error asserts that the evidence showed the unauthorized early release of retention payments caused Commercial Union damages of $100,000. The trial court concluded that there was no evidence that Spaw–Glass' early release of retention payments damaged Commercial Union be-

cause "if Spaw–Glass had not paid retention payments to Kleck of $70,883.90 and $66,-833.90 on October 9, 1987 and November 5, 1987, respectively, Spaw–Glass would have released to Kleck all such amounts on September 29, 1988." Although we have affirmed the trial court's holding that Spaw–Glass had no duty to Commercial Union, we address this point of error to note that the agreed statement of facts does not establish any evidence of a joint trust agreement or any other fact that would establish that a full retention payment to Kleck made on September 29, 1988 would be available to Commercial Union to offset its losses. We therefore overrule the second point of error.

**Estoppel**

In its fourth point of error Commercial Union complains of the trial court's holding that Commercial Union is estopped from recovering from Spaw–Glass the money it paid to Kleck's suppliers by virtue of (1) Kleck's execution of the subcontractor's certification that all suppliers had been paid; (2) Kleck's affidavit in its final release that all claims arising from the project had been paid; and (3) Commercial Union's failure to advise Spaw–Glass before it paid the final retention payments that the surety had paid the claims of Kleck and that it would assert those claims against Spaw–Glass.

Estoppel arises when one party has been induced to change its position for the worse by relying on another. Estoppel then prevents the person in the wrong from asserting an otherwise valid right. *Muller v. Leyendecker*, 697 S.W.2d 668, 674 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.). Although we have held that Commercial Union had no legal or equitable claims against Spaw–Glass, we will address this final point of error. Spaw–Glass was induced to pay the final retention payment by Kleck's certification and affidavit that all its suppliers' claims had been paid and by Commercial Union's failure to advise Spaw–Glass that it had paid any of Kleck's claims. The trial court did not err in applying this equitable rule to defeat Commercial Union's claims, if any. We overrule the fourth point of error.

**CONCLUSION**

Having overruled all the points of error, we affirm the trial court's judgment that Commercial Union had no legal or equitable claims against Spaw–Glass.