DEALERS ELECTRICAL SUPPLY
CO., Petitioner,

v.

SCOGGINS CONSTRUCTION
COMPANY, INC. and Bill R.
Scoggins, Respondents.

No. 08–0272.

Supreme Court of Texas.

Argued Feb. 3, 2009.

Decided July 3, 2009.

Ben L. Aderholt, Joseph Eric Virene, Looper Reed & McGraw, P.C., Houston, TX, for Petitioners.

William Kimball, Law Offices of William F. Kimball, Harlingen, TX, for Respondent.

J. Brett Busby, Bracewell & Giuliani, LLP, Lisa Childress, Houston, TX, Kelly Kunka, Waco, TX, Frank Delgado, Houston, TX, JV Lattimore III, Mc Linney, TX, Janis Rowe, Dallas, TX, John D. Herberger, JD Herberger & Associates, PC, Houston, TX, Misti Lachelle Beanland, Matthews Carlton Stein Sheils Pearce Dunn, Dallas, TX, William R. Allensworth, Allensworth & Porter, L.L.P., Austin, TX, for Amicus Curiae.

Justice O'NEILL delivered the opinion of the Court.

Chapter 2253 of the Texas Government Code, historically called the McGregor Act, requires a prime contractor on a public-work contract to execute a payment bond to protect laborers and materialmen who work on or supply materials for the project. *See* Tex. Gov't Code § 2253.021(a)(2). In this case, an electrical subcontractor on a bonded public-work project walked off the job, leaving his supplier of electrical parts unpaid. The supplier missed the McGregor Act deadline to pursue a claim on the bond, and filed this suit against the prime contractor for violation of the Texas Construction Trust Fund Act, Tex. Prop. Code §§ 162.001(a), 162.031(a), and breach of a separate Joint Check Agreement designed to ensure payment for materials supplied to the subcontractor. We must decide whether the McGregor Act provides the supplier's exclusive remedy. We hold that it does not. Accordingly, we reverse the court of appeals' judgment and remand the case for the court to consider the remaining issues it did not address.

## I. Background

■ Scoggins Construction Company, Inc. (SCC) entered into a $5,751,000.00 public-work contract with Mercedes Independent School District (MISD) in February 2001 for the construction of an elementary school in Mercedes, Texas.[1] Pursuant to section 2253.021(a)(2) of the McGregor Act, SCC executed a payment bond with Fidelity and Deposit Company of Maryland (Fidelity) and Colonial American Casualty and Surety Company (Colonial). SCC subcontracted with Art Bujanos d/b/a Diamond Industries (Diamond) to provide electrical labor and materials for $662,000.00.[2] In March 2001, SCC, Diamond, and Dealers Electrical Supply Co. (Dealers) entered into a Joint Check Agreement whereby, in an effort to "induce [Dealers] to extend or continue extending credit to [Diamond]," SCC agreed to "make all payments for all materials and/or services furnished by [Dealers] to the project by check made jointly payable to [Diamond] and [Dealers]." Based on this agreement, Dealers sold and delivered electrical materials to Diamond for the project between January 1, 2002, and May 2, 2002. In early May 2002, Diamond walked off the job, leaving Dealers unpaid for electrical supplies it had provided.

Dealers sued SCC and SCC's president, Bill Scoggins (collectively, Scoggins), and Diamond, jointly and severally, for violating Chapter 162 of the Texas Property Code, known as the Texas Construction Trust Fund Act, Tex. Prop.Code § 162.001–.033, and for breaching the Joint Check Agreement. Dealers also sued Scoggins, Fidelity, and Colonial, jointly and severally, under the McGregor Act to recover on the payment bond, but later dropped that claim because it failed to comply with the Act's mandatory notice requirements. *See* Tex. Gov't Code §§ 2253.041, 2253.073. After a bench trial, the court ruled that Scoggins violated the Trust Fund Act by receiving payment for electrical materials supplied to the project and failing to pay Dealers for them, and that SCC failed to guarantee payment as

---

1. For purposes of the McGregor Act, a " '[g]overnmental entity' means a governmental or quasi-governmental authority authorized by state law to make a public work contract, including ... a school district." Tex. Gov't Code § 2253.001(1)(C). A " '[p]ublic work contract' means a contract for constructing ... a public building." Therefore, the contract between SCC and MISD is a public-work contract.

2. After two subsequent change orders, the total contract amount between SCC and Diamond was $665,789.00.

required by the Joint Check Agreement. The trial court rendered judgment against Diamond and Scoggins, jointly and severally, for $78,123.59, together with pre-judgment interest, attorneys' fees, and costs. The trial court issued findings of fact and conclusions of law, *inter alia*, that (1) the materials for which Dealers was not paid were incorporated into the project; (2) MISD paid SCC for the materials Dealers provided; (3) by failing to pay Dealers for the materials, Scoggins violated the Trust Fund Act; and (4) under the Joint Check Agreement, SCC guaranteed payment to Dealers for those materials and is therefore liable to Dealers for them.

Scoggins appealed, contending the McGregor Act was Dealers' exclusive remedy. In the alternative, Scoggins challenged the evidence to support a judgment for violation of the Joint Check Agreement or the Trust Fund Act, and the evidence to hold Bill Scoggins personally liable for the debt. Finally, Scoggins claimed that Dealers failed to refute affirmative defenses that Scoggins proved under the Trust Fund Act. The court of appeals agreed that the McGregor Act was Dealers' sole remedy and reversed the trial court's judgment, rendering a take-nothing judgment against Dealers on its alternative claims. 292 S.W.3d 685. We granted Dealers' petition for review to consider whether the McGregor Act precludes Dealers' other statutory and common-law claims. 52 Tex. S.Ct. J. 237, 238 (Tex. Jan. 12, 2009).

## II.  Discussion

### A.  The McGregor Act's Purpose

■ The McGregor Act was enacted to protect public-work laborers and materialmen, since a lien cannot generally be as-serted against a public improvement. *See Mosher Mfg. Co. v. Equitable Surety Co.*, 229 S.W. 318, 319–20 (Tex. Comm'n App. 1921, judgm't adopted; *Chilton Ins. Co. v. Pate & Pate Enters., Inc.*, 930 S.W.2d 877, 886 n. 6 (Tex.App.-San Antonio 1996, writ denied); *Baxter Constr. Co. v. Hou–Tex Prods., Inc.*, 718 S.W.2d 355, 357 (Tex. App.-Houston [1st Dist.] 1986, writ ref'd n.r.e.); *Barfield v. Henderson*, 471 S.W.2d 633, 637 (Tex.Civ.App.-Corpus Christi 1971, writ ref'd n.r.e.). For prime contracts exceeding $25,000, the Act requires the prime contractor to "execute to the governmental entity ... a payment bond" before beginning work. TEX. GOV'T CODE § 2253.021(a)(2). The payment bond must be for the amount of the prime contract and "is solely for the protection and use of payment bond beneficiaries," such as subcontractors, laborers, and materialmen.[3] *Id.* § 2253.021(c). If the Act's stringent notice requirements are followed, a payment-bond beneficiary who has not been paid "may sue the principal or surety, jointly or severally, on the payment bond." *Id.* § 2253.073(a).

■ The McGregor Act is intended to be a simple and direct method for claimants who supply labor and materials for public-work projects to give notice and perfect their claims under the Act. *Capitol Indem. Corp. v. Kirby Rest. Equip. & Chem. Supply Co.*, 170 S.W.3d 144, 147 (Tex.App.-San Antonio 2005, pet. denied) (citing *City of LaPorte v. Taylor*, 836 S.W.2d 829, 831–32 (Tex.App.-Houston [1st Dist.] 1992, no writ)). It is well-recognized that the McGregor Act is remedial in nature, and should be liberally construed to achieve its purposes. *Id.* at 148; *Featherlite Bldg. Prods. Corp. v. Constructors Un-*

---

**3.** " 'Payment bond beneficiary' means a person for whose protection and use [the Act] requires a payment bond." TEX. GOV'T CODE § 2253.001(2). It is undisputed that Dealers is a payment bond beneficiary under the Act.

*limited, Inc.*, 714 S.W.2d 68, 69 (Tex.App.-Houston [14th Dist.] 1986, writ ref'd n.r.e.).

## B. Does the McGregor Act Preclude a Remedy under the Texas Construction Trust Fund Act?

Scoggins contends the remedy available to an unpaid public-work laborer or materialman under the McGregor Act is exclusive. First, Scoggins points to *Commercial Union Insurance Co. v. Spaw–Glass Corp.*, 877 S.W.2d 538 (Tex.App.-Austin 1994, writ denied), and *Bunch Electric Co. v. Tex–Craft Builders, Inc.*, 480 S.W.2d 42 (Tex.Civ.App.-Tyler 1972, no writ), which discussed the McGregor Act's exclusivity. Next, Scoggins argues that, despite legislative changes to the Texas Construction Trust Fund Act in 1987, the Trust Fund Act does not apply when, as in most public-work construction projects, a prime contractor has executed a payment bond. And finally, Scoggins contends that allowing public-work laborers and materialmen to assert claims under the Trust Fund Act might subject prime contractors to double liability. The court of appeals agreed with Scoggins on all three contentions. We address each in turn.

### 1. *Commercial Union* and *Bunch*

The court of appeals relied on *Commercial Union*, 877 S.W.2d at 540, and *Bunch*, 480 S.W.2d at 45, for the blanket proposition that the McGregor Act is exclusive. However, a close reading of those cases, in conjunction with the history of the McGregor Act, only supports a conclusion that the McGregor Act provides an unpaid laborer or materialman an exclusive remedy *against a payment bond*.

In *Commercial Union*, a prime contractor agreed to build a school for Judson Independent School District. 877 S.W.2d at 539. Commercial Union Insurance Co. was the surety for Kleck Plumbing,

HVAC, a subcontractor that agreed to provide plumbing work on the project. *Id.* After the prime contractor fully paid Kleck for its services, Commercial Union was notified that Kleck had unpaid obligations to certain suppliers. *Id.* The suppliers, however, had failed to notify the prime contractor of Kleck's unpaid obligations as the McGregor Act required. *Id.* at 540. Commercial Union nonetheless paid the suppliers, expecting to recover those expenditures from the prime contractor. *Id.* at 539. When the prime contractor refused, Commercial Union sued. *Id.*

The court of appeals denied Commercial Union's claim, reasoning that because the suppliers failed to comply with the McGregor Act's notice requirements, the suppliers would not have been entitled to recover from Commercial Union or the prime contractor on the bond. *Id.* at 540. Thus, Commercial Union should not be allowed to stand in the suppliers' shoes. *Id.* Recognizing that Commercial Union's suit was not a McGregor Act claim, the court noted that the Act's notice requirements "must be strictly complied with if there is to be recovery from a payment bond," and that allowing Commercial Union to assert a claim the suppliers failed to perfect would eviscerate the notice requirements' purpose. *Id.* Additionally, the court stated that "the Act provides the exclusive remedy for laborers and suppliers on a public project." *Id.* (citing *Bunch*, 480 S.W.2d at 45). But *Commercial Union* was not a McGregor Act case and did not discuss whether the unpaid suppliers could have pursued alternate remedies against the prime contractor; accordingly, its application here is off point.

In *Bunch*, Tex–Craft Builders, Inc. contracted with the Housing Authority of the City of Crockett, Texas, to construct a public-housing project. 480 S.W.2d at 43. Continental Casualty Company of Illinois

was Tex–Craft's surety on the project. *Id.* Tex–Craft subcontracted the electrical work to Bunch Electric Company. *Id.* When Tex–Craft failed to pay Bunch for work performed, Bunch sued Tex–Craft, the Housing Authority, and Continental, jointly and severally, under the McGregor Act. *Id.* at 43–44. Finding that Bunch failed to properly notify Continental as the Act required, the trial court rendered judgment only against Tex–Craft. *Id.* Bunch appealed, arguing that it had complied with the notice requirements as to both Tex–Craft and Continental. The court of appeals, in holding that Bunch had failed to follow the requisite procedures for notifying Continental of its claim, noted that "the [McGregor Act] provides the procedure and remedy for presenting a claim *against the bond.*" *Id.* at 45 (emphasis added). "It has been held," the court continued, "that the statute is mandatory as well as exclusive; that it must be complied with in all respects or a cause of action under it is not maintainable." *Id.* (citing *Fed. & Deposit Co. v. Big Three Welding Equip. Co.,* 151 Tex. 278, 249 S.W.2d 183 (1952); *Employers' Liab. Assur. Corp. v. Young County Lumber Co.,* 122 Tex. 647, 61 S.W.2d 339 (1933); *Indem. Ins. Co. of N. Am. v. S. Tex. Lumber Co.,* 29 S.W.2d 1009 (Tex. Comm'n App.1930, judgm't adopted)).

■ While there is some language in *Commercial Union* and *Bunch* that might appear to support Scoggins' position, neither case turned on the McGregor Act's exclusivity. The history of the McGregor Act, as well as the case long cited for the Act's exclusivity—*South Texas Lumber,* 29 S.W.2d 1009—clarify that the McGregor Act was intended to be a public-work laborer or materialman's exclusive claim only as against the payment bond itself, but not necessarily against contractors on a public-work project.

At the time *South Texas Lumber* was decided, the McGregor Act required that a contractor on a public-work project obtain "the usual penal bond, with the additional obligation that such contractor shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work provided for." Act of Mar. 19, 1929, 41st Leg., R. S., ch. 226, § 1, 1929 Tex. Gen. Laws 481, 481. Any laborer or materialman seeking payment for work or supplies had the "right to intervene and be made a party to any action instituted by the [governmental entity] on the bond ... subject, however, to the priority of the claims and judgment of the [governmental entity]." *Id.* However, if the governmental entity failed to bring suit "within six months from the completion and final settlement of [the] contract," the governmental entity would lose priority, and any laborer or materialman could prosecute a suit on the bond. Act of Mar. 20, 1913, 33rd Leg., R.S., ch. 99, § 2, 1913 Tex. Gen. Laws 185, 185–86 Any claim by a laborer or materialman against the bond, though, was required to be brought within one year from the completion and final settlement of the public-work project. *Id.* at § 3, 1913 Tex. Gen. Laws at 186. It was in this statutory context that *South Texas Lumber* was decided, and the Act's exclusivity was first discussed. 29 S.W.2d 1009.

In *South Texas Lumber,* A.E. Quay contracted with the City of Houston for the construction of certain public improvements. The Indemnity Insurance Company of North America was Quay's surety. *South Texas Lumber,* 29 S.W.2d at 1009. South Texas Lumber Company furnished material to Quay for the project. When Quay failed to pay for the material, South Texas Lumber sued Quay and Indemnity Insurance on the bond. *Id.* Although South Texas failed to file suit within the

Act's one-year limitations period, the trial court rendered judgment for South Texas Lumber, and the court of appeals affirmed. *See Indem. Ins. Co. of N. Am. v. S. Tex. Lumber Co.*, 19 S.W.2d 913, 915 (Tex.Civ. App.-Galveston 1929), *rev'd*, 29 S.W.2d 1009 (Tex. Comm'n App.1930, judgm't adopted). In an attempt to avoid the Act's limitations provision, South Texas Lumber argued that the bond itself contained protections in addition to those required by statute; according to South Texas Lumber, it could still assert common-law causes of action against the bond based on those additional protections, which should be governed by a general four-year statute of limitations. *Id.* The court of appeals agreed, but the Texas Commission of Appeals did not. After examining the statutory scheme, the Commission reasoned that, although the statutorily required bond was for the dual protection of the governmental entity and laborers and materialmen, the governmental entity clearly had the dominant claim against the bond. *South Texas Lumber*, 29 S.W.2d at 1011. Were a laborer or materialman allowed to assert a non-statutory cause of action against the bond, the statutory priority given governmental bodies could be circumvented. *Id.* Because such circumvention would be clearly repugnant to the statutory priority

scheme, the Commission held that a McGregor Act claim was the exclusive cause of action that could be asserted *against the bond. Id.* Importantly, nothing in *South Texas Lumber* suggests that a laborer or materialman should be precluded from asserting alternative claims not based on the bond against the prime contractor itself. Reliance on *South Texas Lumber* for such a proposition is, therefore, misplaced.[4]

## 2. The Trust Fund Act's Language

■ Beyond focusing on the exclusivity language found in *Commercial Union* and *Bunch*, the court of appeals cited two decisions interpreting earlier versions of the Trust Fund Act. *See Truckers, Inc. v. S. Tex. Constr. Co.*, 561 S.W.2d 855, 859 (Tex. Civ.App.-Corpus Christi 1977, no writ); *Econ. Forms Corp. v. Williams Bros. Constr. Co.*, 754 S.W.2d 451, 457 (Tex. App.-Houston [14th Dist.] 1988, no writ). Those decisions held that the Trust Fund Act did not apply when a construction contract was covered by a corporate surety bond.[5] Despite significant changes to the statutory language, the court of appeals relied on those decisions in interpreting the current Trust Fund Act. We disagree with that interpretation.

---

4. In 1959, the Legislature took direct action to eradicate several problems created by the statutory scheme. First, the McGregor Act was amended to provide that "[a]ny bond furnished by any prime contractor in attempted compliance with [the Act] shall be treated and construed in conformity with the requirements of [the Act] as to rights created, limitations thereon, and remedies provided." Act of April 13, 1959, 56th Leg., R.S., ch. 93, § 1, 1959 Tex. Gen. Laws 155, 155. In doing so, it seems the Legislature meant to clarify the precise issue presented in *South Texas Lumber*, effectively eliminating any argument that a laborer or materialman could assert a common law action against a McGregor Act bond. Additionally, the Legislature implemented the

requirement that—with regard to public-work contracts of a certain minimum amount—the prime contractor obtain two bonds: (1) a performance bond to protect the governmental body; and (2) a payment bond to protect "all claimants supplying labor and material." *Id.* By requiring separate bonds, the Legislature appears to have eliminated the need for governmental-entity priority in a suit against a single bond.

5. The court of appeals indicated that the Trust Fund Act does not protect unpaid laborers or materialmen in the private construction context. 292 S.W.3d at 693. Although this issue is not before us, we do not endorse the court of appeals' reasoning on this issue.

Under the Trust Fund Act, payments made to a contractor or subcontractor under a construction contract for the improvement of real property are considered to be trust funds. TEX. PROP.CODE § 162.001(a). Subcontractors or suppliers who furnish labor or material for the construction project are considered beneficiaries of any trust funds paid or received in connection with the improvement. *Id.* § 162.003. A trustee misapplies trust funds if it "intentionally or knowingly or with intent to defraud, directly or indirectly retains, uses, disburses, or otherwise diverts trust funds without first fully paying all current or past due obligations incurred by the trustee to the beneficiaries of the trust fund." *Id.* § 162.031(a). A party who misapplies trust funds under the Trust Fund Act is subject to civil liability to trust-fund beneficiaries whom the Act was designed to protect. *See C & G Inc. v. Jones,* 165 S.W.3d 450, 453 (Tex.App.-Dallas 2005, pet. denied).

Until 1987, the Trust Fund Act, by its terms, did not apply to *"receipts* under a construction contract if the full contract amount [was] covered by a corporate surety bond." Act of May 27, 1983, 68th Leg., R.S., ch. 576, § 1, 1983 Tex. Gen. Laws 3475, 3721 (amended 1987) (current version at TEX. PROP.CODE § 162.004) (emphasis added). Thus, until 1987, Dealers would not have been entitled to assert a trust-fund claim against Scoggins, as the prime contract in this case was covered by a corporate surety bond. However, in 1987 the Act was amended, eliminating the language that excluded receipts under a bonded project. Act of May 25, 1987, 70th Leg., R.S., ch. 578, § 2, 1987 Tex. Gen. Laws 2283, 2283. As amended, the Trust Fund Act instead exempts from liability "a

*corporate surety* who issues a payment bond covering the contract for the construction or repair of the improvement." TEX. PROP.CODE § 162.004(a)(3) (emphasis added). By narrowing the statutory exemption in this manner, the Legislature unequivocally expanded the Trust Fund Act's purview. *See Fleming Foods of Tex. v. Rylander,* 6 S.W.3d 278, 284 (Tex.1999). Accordingly, when, as in this case, the full amount of the prime contract is covered by a corporate surety bond, the surety itself is not a trustee of construction funds and cannot be sued under the Trust Fund Act. But even when a public construction project is bonded, the plain language of the amended Act protects laborers and materialmen by providing them with a remedy against a nonsurety trustee's improper diversion of trust funds. *See id.*

The court of appeals, however, determined that the change in the Trust Fund Act's language was non-substantive, and relied on cases interpreting the Act prior to the 1987 amendment. 292 S.W.3d at 691 (citing *Trucker's, Inc.,* 561 S.W.2d at 859; *Econ. Forms Corp.,* 754 S.W.2d at 457). The court compared the pre-amended statute[6] to the current version and found the two statutes to be similar. *Id.* at 691–93. The court then pointed to an acknowledgment by the 1983 Legislature that codified the former statute "that the property code was intended to be a 'topic-by-topic' revision of the state's general and permanent statute law *without substantive change." Id.* at 693 (citing TEX. PROP.CODE § 1.001(a)) (emphasis added by court of appeals). While the court acknowledged that the 1983 codification was amended in 1987, it refused to give any weight to that amendment. *Id.* In doing so, the court erred.

---

**6.** *See* Act of May 27, 1967, 60th Leg., R.S., ch. 323, §§ 1–7, 1967 Tex. Gen. Laws 770, 770–71, *repealed by* Act of May 27, 1983, 68th Leg., R.S., ch. 576, § 6, 1983 Tex. Gen. Laws 3475, 3729–30 (current version at TEX. PROP. CODE §§ 162.001–.004, §§ 162.031–.033).

■ First, courts may not look back to the former text of a statute that has been nonsubstantively re-codified if the current text is direct and unambiguous. *Fleming Foods*, 6 S.W.3d at 286; *see also Arias v. Brookstone, L.P.*, 265 S.W.3d 459, 465 (Tex.App.-Houston [1st Dist.] 2007, pet. denied). The court of appeals erroneously imputed the apparent intent of the 1983 Legislature to the 1987 Legislature and ignored the unequivocal change in statutory language that the latter effected.

■ Additionally, since neither the McGregor Act nor the current version of the Trust Fund Act are expressly exclusive of the other, they can only be exclusive by implication. *See Holmans v. Transource Polymers, Inc.*, 914 S.W.2d 189, 192 (Tex.App.-Fort Worth 1995, writ denied). Conflicting statutory provisions must, however, be construed "so that effect is given to both," if possible. Tex. Gov.Code § 311.026(a). In deciding whether dual remedies may be given effect, we look to whether " 'the Legislature intended for the regulatory process to be the exclusive means of remedying the problem to which the regulation is addressed.' " *City of Waco v. Lopez*, 259 S.W.3d 147, 153 (Tex. 2008) (quoting *In re Sw. Bell Tel. Co.*, 235 S.W.3d 619, 624–25 (Tex.2007)). The McGregor Act reflects no such intent.

■ As noted earlier, the purpose of the McGregor Act is to provide unpaid public-work laborers and materialmen with an additional remedy and a simple and direct method to perfect their claims to that remedy. *See Capitol Indem. Corp.*, 170 S.W.3d at 147. Similarly, the Trust Fund Act was enacted for the protection of laborers and materialmen, and is a remedial statute that should be given a broad construction. *RepublicBank Dallas, N.A. v. Interkal, Inc.*, 691 S.W.2d 605, 607 (Tex. 1985); *C & G Inc.*, 165 S.W.3d at 454. Interpreting the McGregor Act to provide an exclusive remedy for unpaid claims would contravene, rather than further, the purpose of both the McGregor Act and the Trust Fund Act. To hold that one impliedly abrogates the other absent the Legislature's expression would undermine both Acts' clear purpose.

### 3. Double–Liability and Public–Policy Considerations

Scoggins raises an additional concern, contending that the McGregor Act's notice requirement is irreconcilable with the Trust Fund Act's four-year limitations period.[7] *See* TEX. GOV'T CODE § 2253.041. According to Scoggins, if a public-work laborer or materialman provides timely notice under the McGregor Act, the prime contractor will withhold payment from the subcontractor and promptly pay the McGregor Act claimant; thereafter, the prime contractor will deduct that amount from what it pays the subcontractor. Scoggins claims this statutory scheme allows the prime contractor to pay all subcontractors once the notice period has passed, safe in the assumption that no more claims may be asserted. If trust-fund claims may be brought beyond the notice period, Scoggins contends, prime contractors will be reluctant to pay their subcontractors until four years after the laborer or materialman's work is completed, causing subcontractors to institute litigation with resultant costs and delays that will hinder public-work projects. Scoggins also argues that a prime contractor may be subject to double liability when the prime

---

7. The McGregor Act requires notice to be mailed on or before the fifteenth day of the third month after labor or materials was supplied. TEX. GOV'T CODE § 2253.041(b). The Trust Fund Act does not provide a statute of limitations. When a statute of limitations is not provided, a four-year limitations period applies. TEX. CIV. PRAC. & REM.CODE § 16.051.

contractor has already paid a subcontractor for the labor or material supplied, but the subcontractor fails to pay the laborer or materialman. Once again, we believe Scoggins' concerns are unfounded.

First, the argument presupposes that the McGregor Act was intended to benefit contractors by shielding them from all non-McGregor Act liability after the ninety-day notice deadline passes. The Act, however, was enacted to protect unpaid laborers and materialmen by providing them an additional funding source—a payment bond—in the event the prime contractor fails to meet its obligations. Foreclosing laborers' and materialmens' alternative remedies if the McGregor Act's strict notice requirements are not met would undermine its overarching purpose, particularly considering that many laborers and suppliers might have difficulty complying with the Act's notice requirements without the assistance of legal counsel.

Second, since the Trust Fund Act was amended in 1987, bond and trust-fund claims appear to have co-existed harmoniously in the private-construction context even though such bond claims, too, generally come with stringent notice requirements. *See Perry & Perry Builders, Inc. v. Galvan,* No. 03–02–0091–CV, 2003 WL 21705248, at \*4–5 (Tex.App.-Austin July 24, 2003, no pet.) (allowing material supplier to sue on payment bond and under the Trust Fund Act); *U.S. Fire Ins. Co. v. Rey–Bach, Inc.,* No. 3:02–CV–2133K, 2004 WL 1836314, at \*3 (N.D.Tex. Aug.16, 2004) (allowing bond surety the right to subrogation to sue prime contractor for trust-fund violations where the surety paid unpaid laborers and materialmen on a payment bond).

■ Third, the Trust Fund Act provides an affirmative defense when the trust funds not paid to a laborer or materialman

were used to pay the trustee's "actual expenses directly related to the construction or repair of the improvement." Tex. Prop.Code § 162.031(b). Such expenses include payments to subcontractors for costs actually and directly tied to the improvement. *See Taylor Pipeline Constr., Inc. v. Directional Road Boring, Inc.,* 438 F.Supp.2d 696, 716 (E.D.Tex.2006) (citing *Holladay v. CW & A, Inc.,* 60 S.W.3d 243, 248 (Tex.App.-Corpus Christi 2001, pet. denied); Op. Tex. Att'y Gen. No. JM–945 (1988)). Thus, as long as a prime contractor pays its subcontractor for the labor or materials supplied, and does not otherwise misapply trust funds, the prime contractor is—to the extent funds were paid to the subcontractor—protected under the Trust Fund Act from a later claim by the subcontractor's laborers or materialmen for unpaid labor or supplies. Accordingly, the risk of double liability for a prime contractor who pays subcontractors once the McGregor Act notice period has expired is significantly diminished.

Finally, Scoggins' concern that the availability of non-McGregor Act claims will hinder the timely payment of laborers and materialmen on public-work contracts raises a policy concern that is within the Legislature's realm to decide; that the Legislature has not chosen to make the McGregor Act remedy exclusive, despite its obvious ability to do so, is the best indication of its policy. *See, e.g., Tex. Dep't of Transp. v. Jones Bros. Dirt & Paving Contractors,* 92 S.W.3d 477, 484 (Tex.2002) (citing Tex. Transp. Code § 201.112 (providing exclusive remedy for contract claims against the Texas Department of Transportation)).

## C. The Joint Check Agreement

■ Although the parties disagree as to the effect of the Joint Check Agreement, one fact is uncontested: the Joint

Check Agreement was a binding contract between SCC, Diamond, and Dealers. If the McGregor Act was meant to be exclusive, Dealers' common-law breach of contract claim would be preempted. But abrogation of common-law rights is disfavored, and absent clear legislative intent we have declined to construe statutes to deprive citizens of common-law rights. *See Cash Am. Int'l, Inc. v. Bennett*, 35 S.W.3d 12, 16 (Tex.2000). Nothing in the McGregor Act indicates that the Legislature intended to preclude public-work laborers or materialmen from enforcing their contractual rights under the common law. To the contrary, allowing unpaid laborers and materialmen to vindicate their contractual rights furthers the legislative goal of protecting public-work laborers and materialmen whose valid claims cannot be enforced by procuring a lien upon the property. *City of LaPorte*, 836 S.W.2d at 831–32. Because allowing Dealers to recover for SCC's breach of the Joint Check Agreement furthers, rather than frustrates, the McGregor Act's purpose, we hold that the Act does not preempt Dealers' contractual rights.

According to Dealers, the Joint Check Agreement was an unconditional guarantee by SCC to pay for any materials Dealers provided to Diamond. We disagree. In relevant part, the agreement provides that "[SCC] agrees to make all payments for all materials ... furnished by [Dealers] ... by check made jointly payable to [Diamond] and [Dealers]." The agreement's unambiguous language guarantees only that SCC will make payment by joint check. Thus, SCC complied with the agreement to the extent checks were made jointly payable to Diamond and Dealers, and the trial court erred by expanding the agreement's scope. SCC has challenged the sufficiency of Dealers' evidence to support a breach of the joint-payment provision, and we remand the issue to the court of appeals for consideration along with the remaining points.

## III. Conclusion

While Texas cases and the statute itself support a conclusion that the McGregor Act provides a laborer or materialman's mandatory and exclusive remedy against a surety and obligor on a public-work payment bond, that exclusivity does not extend beyond suit against the bond itself. Accordingly, we reverse the court of appeals' judgment and remand the case to the court of appeals to consider the parties' remaining arguments that were not addressed.