# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00636-CV

**Dennis Karbach, Appellant**

**v.**

**Steven Alan Markham; Karen Jordan-Markham; U.S. Black Diamond, Inc. and
Strategic Development, Inc., Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
### NO. D-1-GN-03-00450, HONORABLE JOSEPH H. HART, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is an appeal from two orders granting partial summary judgment on claims related to the construction of improvements on appellant Dennis Karbach's residence. Karbach contends that the district court erred in its determination that the contract at issue encompassed what Karbach characterized as non-contractual claims. We affirm the judgment of the district court.

*Background*

Appellant Dennis Karbach and appellee Strategic Development, Inc. (SDI) entered into a construction contract by which SDI agreed to construct improvements on Karbach's property located at 811 Congress Avenue in Austin. Although, at the time the agreement was signed, Karbach and SDI generally understood that SDI was to convert the shell of an existing historic store-front building on Congress Avenue into a private residence, architectural, engineering, and construction

plans had not yet been completed. On November 27, 2000, Karbach and SDI signed a tri-party construction loan agreement with Liberty Bank of Austin (Liberty) to finance the project. The contract provided that, as the project progressed, SDI would be permitted to take incremental draws on the loan from Liberty. However, because draws were only permitted after work had been completed, Karbach agreed to provide initial funds so that SDI could meet its cash flow obligations while its draw requests to Liberty were pending. Accordingly, Karbach paid SDI a $200,000 deposit. SDI began construction on November 28, 2000. On August 8, 2002, SDI abandoned the project.

On February 12, 2003, Karbach brought suit against appellees Steven Markham, Karen Jordan-Markham, SDI, and U.S. Black Diamond, Inc. (USBD), asserting multiple causes of action, including claims based on theories of common-law fraud, conversion, fiduciary statutory trust and property code violations, deceptive trade practices, residential construction liability, negligence, negligent misrepresentation, negligent hiring, supervision, and/or management, and respondeat superior. After filing a general denial, the Markhams, SDI, and USBD filed two motions for partial summary judgment. In the first, they argued that (1) because the Markhams, SDI, and USBD were not parties to the contract, they could not be liable to Karbach, (2) Karbach's tort claims failed because they arose from the breach of contract claim, and (3) Karbach's fraud claims failed as a matter of law on the summary judgment evidence. The court granted appellees' first motion on January 14, 2004.

On August 18, 2005, following Karbach's amending his petition, appellees filed a second motion for partial summary judgment, in which they addressed the claims added by Karbach's amended petition, including claims for fraudulent inducement and violations of the

Texas Theft Liability Act. The district court granted appellees' second motion on October 12, 2005. On October 10, 2006, the district court entered an order reflecting appellees' nonsuit of their only remaining claim, a claim against SDI for breach of contract. This appeal followed.

*Discussion*

We review the district court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). Summary judgment is proper when there are no disputed issues of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). When reviewing a summary judgment, we take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Valence Operating Co.*, 164 S.W.3d at 661; *Knott*, 128 S.W.3d at 215.

According to Karbach, the evidence conclusively established that appellees were liable for fraudulent inducement and for violations of the Texas Theft Liability Act. In making these allegations, Karbach relies on the tri-party agreement as the legally operative agreement rather than the prior October 1, 2000 contract allegedly relied on by the court. Karbach also argues that what he characterizes as statutory and non-contractual claims should survive summary judgment, as these claims "addressed independent legal duties outside of the contract, and sought to remedy injuries to Karbach that did not relate to the subject matter of the contract."

Karbach also challenges the district court's first partial summary judgment order, arguing that his tort and DTPA claims were not solely for breaches of duties created by the contract, and that his injuries went beyond the economic loss suffered under the contract itself. Citing

3

generally to *Formosa Plastics* in support of his position, Karbach contends that he is entitled to recover under his non-contractual claims because his losses "transcend those contemplated by the subject matter of the Tri-Party Contract." *See Formosa Plastics Corp. v. Presidio Eng'rs & Contractors*, 960 S.W.2d 41, 45-47 (Tex. 1998) ("nature of the remedy" sought by the plaintiff determines whether cause of action sounds in contract or tort). Karbach further argues that, even if his common law and DTPA causes of action are precluded as arising from the contract, his statutory causes of action—including his claims for violations of the construction fund act and the residential construction liability act—remain viable.

In support of their first motion for partial summary judgment, appellees attached the affidavits of Steve Markham and Karen Jordan-Markham and the October 2, 2000 construction contract. In her affidavit, Karen Jordan-Markham averred that her only involvement with respect to the Karbach project had been limited to a few secretarial tasks. Further, according to her affidavit:

> I have never had any discussions with Dennis B. Karbach concerning the construction of the project at 811 N. Congress, Austin, Texas. In fact, I never met Mr. Karbach prior to October 2, 2000. Subsequently, I met him on 2 occasions. Sometime around the first quarter of 2001, I met my husband after work while he was having a drink with Mr. Karbach. I joined them and within an hour or so, Steve and I left to have dinner. Sometime in July, 2001, Steve and I just by chance ran into Mr. Karbach (and his daughter) while leaving a restaurant where we had just finished dinner. We then went back inside, had a drink and talked for about twenty minutes. We then left. On both of these occasions I never discussed the construction project at 811 N. Congress with Mr. Karbach. These were the only 2 occasions I have even spoken with Mr. Karbach.

4

In his affidavit, Steve Markham stated that all of his communications and discussions with Karbach had been on behalf of SDI and were consistent with Karen Jordan-Markham's statements as to the extent of her involvement with the project.

In addition to these affidavits, appellees attached the October 2, 2000 construction contract agreement to their motion for summary judgment. The agreement names "Dennis Karbach" and "Strategic Development, Inc.," as the parties to the agreement. SDI is named as the "Contractor," and Karbach is named as the "Customer." The following description of the project is also included:

> Contractor shall provide all labor and materials to remodel and add to an existing structure located at 811 N. Congress, Austin, Texas; as per the attached plans and specifications (architectural drawings in progress), work shall be performed in a good and workmanlike manner, and in compliance with all applicable building, plumbing and electrical codes.

The three-page contract otherwise provided little detail as to the scope of the project or the duties of the parties, as architectural, engineering, and construction plans had not yet been completed. The contract was signed by Karbach and by Steve Markham—on behalf of SDI—on October 2, 2000.

In his response to appellees' motion for summary judgment, Karbach attached his original petition, Karen Jordan-Markham's responses to interrogatories, and his own affidavit. The evidence presented through Karen Jordan-Markham's written discovery responses was consistent with the evidence presented by appellees as part of their motion. The only additional evidence presented was Karbach's affidavit, with the tri-party loan agreement attached, the substance of which consisted entirely of the following:

5

Attached hereto as Exhibit 1 to this affidavit, and incorporated herein for all purposes, is a true and correct copy of the Tri-Party Agreement between myself, Liberty Bank, and Strategic Development, Inc., dated November 27, 2000, which controlled all aspects of construction for the project that is the subject of the above-captioned and numbered cause of action for construction at 811 Congress Avenue, Austin, Travis County, Texas (the "Project").

Defendant U.S. Black Diamond, Inc. ("USBD") was invoiced for work performed on and materials provided to the Project and subcontractors and other vendors were paid by USBD for work performed and materials provided to the Project. USBD is inextricably intertwined with the Project.

Based on the parties' pleadings and the attached summary judgment evidence, the district court did not err in granting appellees' motion. As the summary judgment movants, appellees had the burden to establish, as a matter of law, that there were no issues of material fact concerning one or more of the essential elements of Karbach's claims. *See* Tex. R. Civ. P. 166a(c); *Phan Son Van v. Pena*, 990 S.W.2d 751, 753 (Tex. 1999).

As to Karbach's contractual claims against the Markhams and USBD, the summary-judgment evidence—specifically, the October 2, 2000 contract between SDI and Karbach—demonstrates that the Markhams and USBD were not parties to the contract. On appeal, even Karbach concedes that "Jordan-Markham, Markham, and USBD were not parties to any agreements with Karbach." Consequently, even if the Markhams' or USBD's actions had contributed to the alleged breach, they are not liable for claims based on the contract. *See, e.g.*, *CTTI Priesmeyer, Inc. v. K&O Ltd. P'ship*, 164 S.W.3d 675, 684 (Tex. App.—Austin 2005, no pet.). This is true even though, as Karbach points out, the Markhams are or were officers of SDI. *See Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex. 1995) (officers and directors of a corporation are generally not liable for the corporation's violation of contractual obligations). Furthermore, after

6

the district court signed its second summary judgment order, Karbach voluntarily nonsuited his alter ego claims against the Markhams and USBD.

In addition to his breach of contract claims, Karbach brought statutory claims based on the contract, including claims for violations of the construction trust fund act and the residential construction liability act. The Texas Construction Trust Fund Act makes construction funds "trust funds" if

> the payments are made to a contractor or subcontractor or to an officer, director, or agent of a contractor or subcontractor, under a construction contract for the improvement of specific real property in this state.

Tex. Prop. Code Ann. § 162.001 (West Supp. 2009). Beneficiaries of the trust fund include artisans, laborers, mechanics, contractors, subcontractors, or materialmen who furnish labor or material for the construction or repair of an improvement. *Id.* § 162.003 (West Supp. 2009). A party who misapplies trust funds under the Trust Fund Act is subject to civil liability to trust fund beneficiaries whom the Act was designed to protect. *Id.* § 162.031 (West Supp. 2009); *Dealers Elec. Supply Co. v. Scoggins Constr. Co.*, 52 Tex. Sup. Ct. J. 1088, 2009 Tex. LEXIS 475, at *16-17 (Tex. July 3, 2009).

Karbach, as the "Customer," does not qualify as a beneficiary of a construction trust fund. *See* Tex. Prop. Code Ann. § 162.003; *Dealers Elec. Supply Co.*, 2009 Tex. LEXIS 475, at *16-17. He does not assert—and presents no evidence that—he acted as an artisan, laborer, mechanic, contractor, subcontractor, or materialman on the project. The district court, therefore, properly granted summary judgment on this claim.

7

Karbach further argues that he is entitled to recover damages from appellees under the residential construction liability act. *See* Tex. Prop. Code Ann. §§ 27.001-.007 (West 2000 & Supp. 2009). Chapter 27 applies to actions to recover damages arising from construction defects, but specifically does not apply to:

> an action to recover damages that arise from:
>
> (1)      a violation of Section 27.01, Business & Commerce Code;
>
> (2)      a contractor's wrongful abandonment of an improvement project before completion; or
>
> (3)      a violation of Chapter 162.

*Id*. § 27.002 (West Supp. 2009). Karbach expressly asserts—and the evidence supports—that his lawsuit arises from appellees' alleged wrongful abandonment of the project before completion. He asserts: "On August 8, 2002, without cause, Markham removed his SDI sign and abandoned the Project, leaving Karbach owing $236,797.40," and "The project was left unfinished, with much work not performed in a good and workmanlike manner." The evidence supports Karbach's assertions that SDI abandoned the project. Accordingly, the residential construction liability act does not apply, and the district court properly granted summary judgment on this claim.

As to Karbach's remaining claims against appellees, appellees argued in their motion for summary judgment that, as a matter of law, those claims fail because they arise from injuries allegedly suffered due to the alleged breach of contract. Karbach's non-contractual claims were based on theories of common-law fraud, conversion, breach of fiduciary duty, deceptive trade practices, negligence, negligent misrepresentation, negligent hiring, supervision, and/or management,

8

and respondeat superior.  Based on these claims, Karbach seeks economic damages, damages for mental anguish, multiple damages, exemplary damages, and attorneys' fees.  Specifically, Karbach seeks the recovery of the following:

(a)     Out-of-pocket expenses, including but not limited to attorneys' fees, consultants' fees, copies of documents;

(b)     Loss of use;

(c)     Cost of replacement;

(d)     Interest and/or finance charges assessed against and paid by Plaintiff;

(e)     Diminished or reduced market value of the property the subject of this action;

(f)     Cost of repairs necessary to cure the above-described construction defects;

(g)     Remedial costs and/or costs of completion;

(h)     Reasonable and necessary engineering or consulting fees required to evaluate and cure the above-described construction defects; and

(i)     Reasonable expenses of temporary housing.

Karbach also seeks damages for mental anguish he sustained as a result of appellees' "false, misleading and deceptive acts, practices and/or omissions," and for multiple and exemplary damages based on the allegation that the alleged acts were committed "knowingly, willfully, [and] intentionally."  Contrary to Karbach's assertions on appeal, however, his pleadings and the evidence show that each of these claims pleaded as non-contractual claims actually arise from and are part and parcel of Karbach's claims for breach of contract.

9

A contractual relationship between parties may create duties under both contract and tort law. *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986). The nature of the injury determines the duty breached. *Formosa Plastics*, 960 S.W.2d at 45-47; *Jim Walter Homes*, 711 S.W.2d at 618. The nature of a party's claim depends on its substance, not the manner in which it is pleaded. *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 131-32 (Tex. 2005). A claim is brought in contract if liability arises from the contract, while a claim is brought in tort if liability is derived from other general obligations imposed by law. *Id.* at 132; *Jim Walter Homes*, 711 S.W.2d at 618. Although, in pleading these claims, Karbach does not expressly refer to the contract, the claims nonetheless "relate to" and cannot be maintained without reference to the parties' respective rights and duties under the contract, including the work required of SDI, the quality of that work, and payment requirements. *See In re Weekley Homes*, 180 S.W.3d at 132; *Jim Walter Homes*, 711 S.W.2d at 618. Accordingly, the district court properly granted summary judgment on these claims.

Citing to *Formosa Plastics*, however, Karbach suggests that, even if his other non-contractual claims fail, he may maintain a claim for fraudulent inducement as to all appellees.[1] Under *Formosa Plastics*, tort damages are recoverable for fraudulent inducement regardless of whether the fraudulent representations are later subsumed in a contract or whether the plaintiff only suffers an economic loss related to the subject matter of the contract. *Formosa Plastics*, 960 S.W.2d at 47. A cause of action for fraud requires: (1) a material misrepresentation, (2) which was false,

---

[1] As discussed later in this opinion, it is unclear whether Karbach makes this argument with respect to the first summary judgment order or the second. Regardless, our analysis applies to both orders, and we will discuss its merits here.

(3) which was either known to be false when made or was asserted without knowledge of its truth, (4) which was intended to be acted upon, (5) which was relied upon, and (6) which caused injury. *Id.*

The summary judgment record contains no evidence to establish that any misrepresentations were made by any appellee. Rather, the October 2, 2000 contract indicates that architectural drawings were still in progress, that construction was to be "per engineering and architectural plans," that allowances were "To Be Determined as per final architectural drawings," and that "Time for completion" was as follows:

> To Be Determined after architectural plans are complete. Both parties understand the following issues may effect [sic] the completion date.
>
> 1.  Completion of architectural and engineering plans
>
> 2.  Approval of the building site plans by the City of Austin
>
> 3.  Change orders
>
> 4.  Landmark/Historic determination
>
> 5.  Acts of God

In light of the fact that architectural, engineering, and construction plans had not been completed at the time the parties entered into their construction contract, and that both parties understood that much was left to be determined following completion of these plans, we find no evidence that appellees made any false representations with respect to any of the indefinite items in the contract, and Karbach points us to none.

Under the traditional summary judgment standard, appellees bore the initial burden of presenting summary judgment evidence negating one or more elements of each of Karbach's claims. Appellees presented the written contract as evidence that the agreement was between Karbach and SDI, that the agreement determined the parties' respective rights with regard to the construction project, and that most of the material terms in the contract were left to be determined, including the specific improvements to be made and the time of their completion. Appellees, thereby, made an initial showing that they were entitled to summary judgment as a matter of law, and the burden shifted to the nonmovant, Karbach, to raise a genuine, material fact issue sufficient to defeat summary judgment. *See M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). In response, Karbach presented only his own affidavit, through which he introduced the tri-party agreement, but presented no additional evidence. Rather, Karbach concluded that the tri-party agreement rather than the October 2, 2000 agreement "controlled all aspects of construction for the project" and that "USBD [was] inextricably intertwined with the Project." The tri-party loan agreement, however, was consistent with evidence offered by appellees and did nothing to define the material terms of the previous contract that had been left open. Even viewing the summary judgment evidence in the light most favorable to Karbach, as required, *see Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006), Karbarch failed to raise a fact issue as to his fraudulent inducement claim. Accordingly, we find that the district court properly granted summary judgment on this claim.

Karbach also challenges the second partial summary judgment. He argues that summary judgment was procedurally improper, that the fraud claims were not barred by the existence

of a contract, that the summary judgment evidence raised material issues of fact, and that the tri-party agreement applies because it subsumes all other prior agreements.

After the district court granted appellees' first motion for summary judgment and after the discovery period had ended, Karbach amended his petition to add claims for fraudulent inducement and violations of the Texas Theft Liability Act. In response, appellees filed a second motion for summary judgment, arguing that the claims added by Karbach in his amended petition had already been disposed of by the district court's first summary judgment order. After appellees filed their second motion for summary judgment, Karbach again amended his petition[2] and, on the same day, responded to appellees' second summary judgment motion, attaching his own affidavit with ten attached exhibits, including the tri-party loan agreement.

Karbach argues that it was procedurally improper for the district court to rely on its first order of summary judgment as grounds for granting appellees' second motion for summary judgment. Karbach asserts that he raised a "new theory of liability"—the tri-party construction agreement—as the basis for his fraud and theft liability act claims. He argues that the tri-party agreement is now the "dispositive contractual document" because he "unequivocally identified" it as such in his third amended petition, and then relies on the tri-party agreement to support claims under the theft liability act and his claims for fraud or fraudulent inducement, emphasizing that neither of appellees' motions for summary judgment "discusses or even references" the tri-party agreement.

---

[2] Because the second amended petition is not a part of the record, it is unclear what was added or changed in the third amended petition.

13

What Karbach terms a "new theory of liability" is not a theory of liability, but evidence. Moreover, this evidence was in the motion before the district court and in the summary judgment record at the time the court granted appellees' first motion for summary judgment. In addition, even if Karbach is correct in his assertion that the tri-party agreement "subsumes earlier agreements," it does not affect our analysis. As even Karbach recognizes, neither the Markhams nor USBD were parties to the tri-party loan agreement. Karbach's statutory claims fail because, even considering the tri-party loan agreement, the statutory provisions are inapplicable. Karbach's remaining non-contractual claims continue to be based upon the rights and responsibilities derived from the contract. Finally, even the more detailed tri-party loan agreement raises no issue of material fact as to Karbach's fraudulent inducement claim.

Although Karbach also asserts what he characterizes as new causes of action, each was already advanced in his original petition and disposed of by the first summary judgment order. Fraudulent inducement is a type of fraud and, like any cause of action for fraud, requires (1) a material misrepresentation, (2) which was false, (3) which was either known to be false when made or was asserted without knowledge of its truth, (4) which was intended to be acted upon, (5) which was relied upon, and (6) which caused injury. *See Formosa Plastics*, 960 S.W.2d at 47; *Texas S. Univ. v. State St. Bank & Trust Co.*, 212 S.W.3d 893, 914 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). In addition, courts have held that a summary judgment motion—if directed at the element of one cause of action—can be effective against even subsequently pleaded claims if they share that same element. *See Wortham v. Dow Chem. Co.*, 179 S.W.3d 189, 202 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *Lampasas v. Spring Center, Inc.*, 988 S.W.2d 428,

14

435-37 (Tex. App.—Houston [14th Dist.] 1999, no pet.). Consequently, even though Karbach did not specifically use the term "fraudulent inducement" in his original petition, the district court's order granting summary judgment as to each of Karbach's claims, including fraud, was effective against his later-pleaded fraudulent inducement claim. Even considering the tri-party loan agreement as the basis of the fraudulent inducement claim, as we have discussed, our analysis does not change.

As a second new cause of action, Karbach alleges that appellees violated the theft liability act. The theft liability act creates liability for damages resulting from a theft and defines a theft as "unlawfully appropriating property or unlawfully obtaining services" as described in the penal code, and specifically includes section 31.03. Tex. Civ. Prac. & Rem. Code Ann. §§ 134.002-.003 (West 2005); Tex. Penal Code Ann. § 31.03 (West Supp. 2009). Referring to section 31.03, section 31.02 provides:

> Theft as defined in Section 31.03 constitutes a single offense superseding the separate offenses previously known as theft, theft by false pretext, conversion by a bailee, theft from the person, shoplifting, acquisition of property by threat, swindling, swindling by worthless check, embezzlement, extortion, receiving or concealing embezzled property, and receiving or concealing stolen property.

Tex. Penal Code Ann. § 31.02 (West 2003). Conversion is, thus, a cause of action similar to theft or one means by which a person "unlawfully appropriates property with intent to deprive the owner of property." *See id.* § 31.03. Even though Karbach did not expressly allege a violation of the theft liability act in his original petition, he did allege conversion, and the district court granted summary judgment on that claim. As Karbach's amended petitions merely asserted the same claim in a different form, the district court's judgment was effective against Karbach's later-pleaded

15

theft liability act claim. *See Wortham*, 179 S.W.3d at 202; *Lampasas*, 988 S.W.2d at 435-37. Again, as we have discussed, even considering the tri-party loan agreement as the basis for this claim, our analysis does not change.

### *Conclusion*

Having found that the district court properly granted summary judgment as to each of Karbach's claims, we overrule each of his issues and affirm the judgment of the district court.

_____

G. Alan Waldrop, Justice

Before Justices Puryear, Waldrop and Henson

Affirmed

Filed:   November 6, 2009