**UNITED FIRE & CASUALTY CO., Appellant,**

v.

**BORING & TUNNELING COMPANY OF AMERICA d/b/a Bortunco, Appellee.**

No. 01–08–00487–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 11, 2010.

Rehearing Overruled March 18, 2010.

Brian R. Gaudet, Coats, Rose, Yale, Ryman & Lee, P.C., League City, TX, for appellant.

1. Chapter 2253 of the Texas Government Code is commonly referred to as the "McGregor Act." *See* TEX. GOV'T CODE ANN. §§ 2253.001–.079 (Vernon 2008 & Supp. 2009). The McGregor Act requires general contractors to secure payment bonds on public works projects because subcontractors cannot secure liens on public buildings and provides the procedure for collecting on the bonds. *Id.*

Jerrad D. Bloome, Richard M. Kaplan, Weycer, Kaplan, Pulaski & Zuber, P.C., Houston, TX, for appellee.

Panel consists of Justices KEYES, HANKS, and SHARP.

## OPINION

EVELYN V. KEYES, Justice.

On cross motions for summary judgment in a suit to collect on a McGregor Act[1] payment bond, the trial court granted summary judgment in favor of appellee, Boring & Tunneling Company of America ("Bortunco"), and denied the motion of appellant, United Fire & Casualty Company ("United Fire"). In two issues, United Fire argues that (1) Bortunco failed to substantially comply with the notice provisions of the McGregor Act; and (2) it did not waive its right to, nor is it estopped from, asserting notification defects.

We affirm.

## BACKGROUND

Golf Services Group contracted with Harris County and the City of Houston to complete two different water line projects and, in compliance with the McGregor Act, obtained a payment bond through United Fire to ensure that any subcontractors would be paid if Golf Services defaulted. Golf Services subcontracted with Bortunco in May 2004 to complete the boring and tunneling work on the projects. Bortunco completed all work and fully performed its obligations under its agreement with Golf Services, but Golf Services failed to pay Bortunco for its work.

Bortunco sent notices to United Fire that it was seeking to collect against the payment bond for the services it had provided. Among the notices that Bortunco sent was one dated October 14, 2005, relating a claim for work and material expenses incurred in July and August of 2005. Bortunco sent the notice on a "sworn statement form," and an agent for Bortunco signed the statement, but the notary did not attach a seal or signature. Bortunco's notice comported with the statute in all other respects. Bortunco's notice also requested that United Fire notify Bortunco if the claim was deficient in "any way." United Fire received the notice and sent a letter acknowledging receipt of the claim and informing Bortunco that it would investigate the claim. The letter United Fire sent Bortunco stated, "Neither this letter, or any investigation by the Surety, should be construed to be a waiver of any rights under the bond." United Fire did not object to the missing notary signature and seal.

On December 14, 2005, nearly two months after the claim filing deadline, Bortunco noticed that the original sworn statement was missing a notary seal and sent an identical sworn statement with a notary's signature and seal. United Fire responded on January 11, 2006 with the same letter it had sent the first time.

Neither Golf Services nor United Fire, as the surety on Golf Service's payment bond, paid Bortunco for the work it completed, and, on February 7, 2006, Bortunco filed suit against both Golf Services and United Fire seeking recovery of the contract balances on both projects in the amount of $438,389.74. Subsequently, Bortunco and United Fire settled the majority of Bortunco's claims except for work and material expenses Bortunco incurred in July and August 2005. United Fire moved for summary judgment on the ground that Bortunco was not entitled to recover the remaining expenses because it had failed to give proper notice, specifically arguing that the October 14, 2005 notice lacked a sworn statement of account as required by the McGregor Act. United Fire supported its motion for summary judgment with copies of the October 14 and December 14 notices.

Bortunco filed its own motion for summary judgment and response to United Fire's motion, arguing that its notice substantially complied with the McGregor Act notice provisions, or, alternatively, that United Fire "waived strict compliance with the notice provisions of the McGregor Act" and should be "estopped from demanding strict compliance." In addition to copies of the relevant notices and United Fire's responses, Bortunco supported its motion for summary judgment with the affidavit of Joe Gibbs averring that the notary had placed him under oath and that he had sworn to and signed the sworn statement of account dated October 14, 2005 in the notary's presence, and that the notary's oversight resulted in the missing signature and seal. Bortunco also provided the affidavit of the notary averring that Gibbs did swear to the contents of the sworn statement under oath and signed it in her presence and stating, "[T]he absence of my signature is solely indicative of a clerical error committed by me; Mr. Gibbs swore to and signed the Sworn Statement of Account under oath and in my presence and I simply neglected to place thereon my signature and seal as notary before mailing it to the surety and contractor . . . ."

On December 12, 2007, the trial court granted Bortunco's motion for summary judgment, awarding Bortunco the $142,542.75 it claimed for the July and August 2005 work, and denied United

Fire's motion without an opinion. United Fire appeals.

## Standard of Review

We review a trial court's grant or denial of summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex.2003). To prevail on a traditional summary judgment motion, the movant has the burden of proving that it is entitled to judgment as a matter of law and that there are no genuine issues of material fact. TEX.R. CIV. P. 166a(c); *Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex. 1995). When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review the summary judgment evidence presented by both sides, determine all questions presented and render the judgment that the trial court should have rendered. *Tex. Workers' Comp. Comm'n v. Patient Advocates,* 136 S.W.3d 643, 648 (Tex.2004).

## McGregor Act and Substantial Compliance

■ United Fire contends that the notice Bortunco sent did not include a "sworn statement" as required by the McGregor Act because the notice did not have a notary seal or signature. Therefore, United Fire contends Bortunco failed to adhere to notice provisions in the McGregor Act and is not entitled to payment. Bortunco avers it substantially complied with the McGregor Act because the document was only defective as a result of the notary's clerical error.

■ The legislature passed the McGregor Act to ensure payment to subcontractors because they may not place a lien against a public building. *Suretec Ins. Co. v. Myrex Ind.,* 232 S.W.3d 811, 813 (Tex.App.-Beaumont 2007, no pet.); *Ramex Constr. Co. v. Tamcon Serv. Inc.,* 29

S.W.3d 135, 139 (Tex.App.-Houston [14th Dist.] 2000, no pet.). It was not intended to set up "technical tricks, traps, and stumbling blocks to the filing of legitimate notices of claims," but "to provide a simple and direct method of giving notice and perfecting claims." *Argee Corp. & Seaboard Sur. Co. v. Solis,* 932 S.W.2d 39, 52–53 (Tex.App.-Beaumont 1995), *rev'd on other grounds,* 951 S.W.2d 384 (Tex.1997). The notice requirements were also intended "to protect the prime contractor from incurring double liability [and to relieve them of] liability for claims not asserted before retainage is paid in full." *Commercial Union Ins. Co. v. Spaw–Glass Corp.,* 877 S.W.2d 538, 540 (Tex.App.-Austin 1994, writ denied).

The McGregor Act requires general contractors to secure a bond from a surety, allows a subcontractor to sue the surety for unpaid balances for work and materials, and awards reasonable attorneys' fees. *Id.; see* TEX. GOV'T CODE ANN. §§ 2253.021, 2253.073 (Vernon 2008). To recover under the act, a claimant or subcontractor must provide notice to the general contractor and the surety in writing. TEX. GOV'T CODE § 2253.041. The McGregor Act further provides that the notice must conform to the following requirements:

(b) The notice must be mailed on or before the 15th day of the third month after each month in which any of the claimed labor was performed or any of the claimed material was delivered.

(c) The notice must be accompanied by a sworn statement of account that states in substance:

(1) the amount claimed is just and correct; and

(2) all just and lawful offsets, payments, and credit known to the affiant have been allowed.

(d) The statement of account shall include the amount of any retainage applicable to the account that has not become due under the terms of the public work contract between the payment bond beneficiary and the prime contractor or between the payment bond beneficiary and a subcontractor.

Tex. Gov't Code Ann. § 2253.041(b)–(d) (Vernon 2008).

The McGregor Act is remedial in nature, and, therefore, "[t]he statute is to be given the most comprehensive and liberal construction possible." *Ramex*, 29 S.W.3d at 139; *see also City of LaPorte v. Taylor*, 836 S.W.2d 829, 832 (Tex.App.-Houston [1st Dist.] 1992, no writ). As a result, case law has established that adherence to notification deadlines requires strict compliance, but substantial compliance is adequate for the other notice provisions. *Cf. Commercial Union Ins.*, 877 S.W.2d at 540 (holding that claimants could not recover when they failed to give any notice); *Suretec Ins. Co.*, 232 S.W.3d at 816 (failure to provide notice by 15th day of month not saved by substantial compliance); *Capitol Indem. Corp. v. Kirby Rest. Equip. & Chem. Supply Co.*, 170 S.W.3d 144, 147 (Tex.App.-San Antonio 2005, pet. denied) (holding "sworn certificate" that did not precisely comport with statutory language sufficient); *U.S. Fid. & Guar. Co. v. Parker Bros. & Co.*, 437 S.W.2d 880, 881–82 (Tex.Civ.App.-Houston [1st Dist.] 1969, writ ref'd n.r.e.) (claimant substantially complied with notice provisions although sworn statements were sent to general contractor and unsworn statements sent to surety). Substantial compliance has been defined as "compliance with the 'essential requirements of a statute' " and occurs when an actor's deviation does

not seriously impede the legislative purpose of the statute. *See Stratton v. Austin Indep. Sch. Dist.*, 8 S.W.3d 26, 30 (Tex.App.-Austin 1999, no pet.).

United Fire cites several cases which have held that late notification did not substantially comply with the McGregor Act. *See, e.g., Laboratory Design & Equip., Inc. v. Brooks Dev. Auth.*, No. 04–07–00284–CV, 2008 WL 36614, at *3 (Tex. App.-San Antonio, no pet.) (holding that notice mailed one year late and failure to provide any sworn statement whatsoever with notice prevented subcontractor from recovering against payment bond). However, the issue here is not one of late notification. United Fire argues that Bortunco's notice was deficient because it lacked the notary signature and seal, not because the notice was untimely. Nor did Bortunco's notice fail to provide any sworn statement whatsoever. Therefore, *Laboratory Design* and the other cases United Fire relies on are distinguishable.[2]

We conclude that this case is similar to *Acme Brick*. In *Acme Brick*, the claimant sent an otherwise correct notice with the affiant's signature in the wrong place on the sworn statement. *Acme Brick, a Div. of Justin Indus., Inc. v. Temple Assoc.*, 816 S.W.2d 440, 441 (Tex.App.-Waco 1991, writ denied). The document contained a notice of claim, factual statement that the claims were just and correct, the signature of the affiant, and the notary's certification of the statement with a seal. *Id.* The court held that the document did qualify as an affidavit, but stated, "Moreover, even if the statement was not an affidavit, the McGregor Act requires only substantial compliance with its notice provisions. . . . We find the notices sent by Acme to [the prime contractor and surety] substantially

---

**2.** Appellant also cites several cases dealing with the use of affidavits in other contexts. These cases are distinguishable because they do not address substantial compliance with the sworn statement required by the McGregor Act.

complied with the notice provisions of the McGregor Act." *Id.* (citing *Featherlite Bldg. Prods. Corp. v. Constructors Unlimited, Inc.*, 714 S.W.2d 68, 69 (Tex.App.-Houston [14th Dist.] 1986, writ ref'd n.r.e.)).

Here, although Bortunco's sworn statement is missing the official certification by the notary to qualify as a affidavit, it is uncontested that Bortunco's agent swore to the statement before an "officer authorized to administer oaths" and signed the statement in the notary's presence. Likewise, the notice otherwise supplies the statutorily required statements and information and was delivered by the required deadline. Bortunco's notification was only deficient because of the notary's clerical error in failing to attach her signature and seal before mailing the document.

We also note that United Fire received actual notice within the statutory deadline [3] and that, as soon as Bortunco noticed the clerical omission, it sent an identical notice and sworn statement, this time with the notary's signature and seal. Bortunco's notary's failure to affix a seal and signature to the sworn statement did not expose the prime contractor or the surety to increased liability, nor did it prevent United Fire from having actual notice of the claims Bortunco was making against the payment bond, especially in light of the fact that Bortunco apparently submitted numerous notices in compliance with the McGregor Act in the course of its dealings with United Fire.

Because Bortunco's sworn statement met the essential requirements of the stat-

ute in providing actual notice to United Fire of Bortunco's claims against the bond and adequately protected both Golf Services and United Fire from undue liability, we hold that the document substantially complied with the McGregor Act's notice provisions. To hold otherwise would require that we set up "technical tricks, traps, and stumbling blocks to the filing of legitimate notices of claims" rather than providing "a simple and direct method of giving notice and perfecting claims" as the legislature intended. *See Argee Corp.*, 932 S.W.2d at 52–53. Therefore, Bortunco met its burden of proving that it was entitled to judgment as a matter of law and that there were no genuine issues of material fact. *See* Tex.R. Civ. P. 166a(c); *Cathey*, 900 S.W.2d at 341.

We overrule United Fire's first issue.

Because we have determined that Bortunco's notice substantially complied with the requirements of the McGregor Act, we do not need to address United Fire's argument that it is not estopped and did not waive its right to assert notification defects.

## CONCLUSION

We affirm the judgment of the trial court.

---

**3.** A surety's actual notice has been discussed and used in some cases to establish substantial compliance. *See Redland Ins. Co. v. Sw. Stainless, L.P.*, 181 S.W.3d 509, 512 (Tex. App.-Fort Worth 2005, no pet.) (holding that because surety received actual notice, need of subcontractor to comport with statutory requirement that notice be sent certified mail

was negated); *Tex–Craft Builders, Inc. v. Allied Constructors of Houston, Inc.*, 465 S.W.2d 786, 792 (Tex.Civ.App.-Tyler 1971, writ ref'd n.r.e.) (discussing possibility that surety's actual knowledge and notice of details of claim could be sufficient to establish substantial compliance with McGregor Act).