

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-14-00056-CV

BOND RESTORATION, INC., APPELLANT

V.

READY CABLE, INC., APPELLEE

On Appeal from the County Court at Law No. 3
Tarrant County, Texas
Trial Court No. 2012-005498-3, Honorable Mike Hrabal, Presiding

April 16, 2015

OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Bond Restoration, Inc. (Bond) appeals from a final judgment awarding Ready Cable, Inc. (Ready) damages related to the cost of materials purportedly used in a public works project. The two issues before us involve whether Ready proved that the materials were delivered to or used by Bond and whether the trial court's award of consequential damages comported with Chapter 2253 of the Government Code (that is, the McGregor Act). We reverse.

*Background*

In 2012 and 2013, E. P. Reyes & Sons purchased supplies from Ready purportedly for use in a street improvement project undertaken by the City of Houston. Bond allegedly was the prime contractor for the project. Reyes did not pay for the materials. This resulted in Ready requesting from Bond information regarding the payment bond securing payment for the project. Bond did not respond. Thereafter, Ready sought similar information from the City of Houston. The latter answered by informing Ready that it was "unable to identify the **City of Houston project or vendor**" and to furnish "more information, including the **complete City of Houston project name and project number**." (Emphasis in original). Ready had no project name or number.

Eventually, the deadline to submit a claim against the bond, if any, lapsed. So, Ready sued Reyes for breach of contract and Bond under § 2253.024 of the Texas Government Code "for failure to provide bond information as required by" that statute. A default judgment was entered against Reyes for the sum due Ready. After conducting a bench trial, the trial court entered judgment against Bond for consequential damages or an amount equal to the unpaid invoices that would have been paid had Bond timely provided the requisite bond information.

**The McGregor Act or Texas Government Code § 2253.001 et seq.**

Before addressing the issues before us, we briefly mention the provisions of the McGregor Act (the Act) relevant here. The first is § 2253.024. It states:

(a) A prime contractor, on the written request of a person who provides public work labor or material . . . shall provide to the person

> (1) the name and last known address of the governmental entity with whom the prime contractor contracted for the public work;
>
> (2) a copy of the payment and performance bonds for the public work, including bonds furnished by or to the prime contractor; and
>
> (3) the name of the surety issuing the payment bond and the performance bond and the toll-free telephone number maintained by the Texas Department of Insurance under Subchapter B, Chapter 521, Insurance Code, for obtaining information concerning licensed insurance companies.

TEX. GOV'T CODE ANN. § 2253.024(a)(1), (2), & (3) (West 2008). "Public work material" is defined as "material used, or ordered and delivered for use, directly to carry out a public work; [or] . . . specially fabricated material; [or] . . . reasonable rental and actual running repair costs for construction equipment used, or reasonably required and delivered for use, directly to carry out work at the project site; or . . . power, water, fuel, and lubricants used, or ordered and delivered for use, directly to carry out a public work." *Id.* § 2253.001(6). In turn, "public work labor" is "labor used directly to carry out a public work." *Id.* § 2253.001(5).

Next, the statutory obligation imposed on a prime contractor under the Act to secure a payment bond arises when the contract between the prime contractor and municipality exceeds $50,000. *Id.* § 2253.021(a)(2)(B) (West Supp. 2014). Per statute, the payment bond is "solely for the protection and use of payment bond beneficiaries who have a direct contractual relationship with the prime contractor or a subcontractor to supply public work labor or material . . . ." *Id.* § 2253.021(c)(1). Finally, a subcontractor is "a person, firm, or corporation that provides public work labor or material to fulfill an obligation to a prime contractor or to a subcontractor for the

3

performance and installation of any of the work required by a public work contract." *Id.* § 2253.001(9).

### *Application of § 2253.001 et seq.*

We address Bond's initial contention. Through it, the company posits that "actual proof of delivery at the project site or consumption of the materials in the work is required for a material supplier to be entitled to establish a valid bond claim on a public works project," and that "proof of neither exists." In other words, Bond argues that the evidence is legally insufficient to satisfy an element of Ready's claim, that element being the provision of material used or ordered and delivered for use in a public work.

As explained in *Ford Motor Co. v. Castillo*, 444 S.W.3d 616 (Tex. 2014), a legal insufficiency challenge will be upheld if the record illustrates either 1) a complete absence of a vital fact, 2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, 3) the evidence offered to prove a vital fact is no more than a mere scintilla, or 4) the evidence conclusively establishes the opposite of the vital fact. *Id.* at 620. Furthermore, we view the evidence in the light most favorable to the verdict and assume that the fact finder made all inferences in favor of its decision if reasonable minds could. *Id.* at 620-21. In viewing circumstantial evidence favoring the decision, we must "'view each piece of circumstantial evidence, not in isolation, but in light of all the known circumstances,'" *id.*, *quoting City of Keller v. Wilson*, 168 S.W.3d 802 (Tex. 2005), and when that evidence "is equally consistent with either of two facts, then neither fact may be inferred." *Id.* However, if not so "equally consistent with either of two facts, and the inference drawn by the jury is within the 'zone of reasonable disagreement,' a reviewing court cannot substitute its judgment for

4

that of the trier-of-fact." *Id.* at 621, *quoting City of Keller v. Wilson*, 168 S.W.3d 802 (Tex. 2005). With this said, we turn to the record before us.

Bond cites us to authority holding that the claimant in a public works project must show that "the materials furnished were actually used on the job . . . and that same were consumed or wholly depreciated in the process of the construction work." *John F. Buckner & Sons v. Arkansas Fuel Oil Corp.*, 301 S.W.2d 325, 327 (Tex. Civ. App.—Waco 1957, no writ); *accord Sheldon Pollack Corp v. Pioneer Concrete of Texas. Inc.*, 765 S.W.2d 843, 846 (Tex. App.—Dallas 1989, writ denied) (noting the same); *National Surety Corp. v. Dabney,* 282 S.W.2d 70, 74 (Tex. Civ. App.—Waco 1955, no writ) (stating the same). Yet, none of the cases cited deal with § 2253.001 of the Government Code.

Moreover, the plain language of the statute contradicts the notion that the materials provided must actually be consumed in the project. As previously mentioned, § 2253.001(6) of the statute defines "public work material." In so defining it, the legislature utilized phrases such as "material used" and material "ordered and delivered for use," *see* TEX. GOV'T CODE ANN. § 2253.001(6)(A) (West 2008), and construction equipment "used, or reasonably required and delivered for use . . . ." *See id.* § 2253.001(6)(C). While the word "used" comports with Bond's argument, the passage "delivered for use" does not. Logically, items "delivered for use" need not be used. That is, the phrase "delivered for use" says nothing about actual use in the project, just delivery, and the purpose for delivery. And, because we must afford meaning and affect to all the verbiage in a statute, *Jaster v. Comet II Constr., Inc.,* 438 S.W.3d 556, 562 (Tex. 2014), "delivered for use" simply cannot be construed to mean "used," as Bond

5

would have us conclude.  So, Ready was not obligated to prove that the materials sold to Reyes were actually used in the public works project.  Yet, this does not end our task.

It appears that Bond also argues that the record "lacks sufficient evidence to establish actual proof of delivery at the project site."  It is true that Ready's sole witness admitted that the materials were not delivered to Bond or its construction site.  Instead, the evidence established that Reyes picked them up at Ready's facility, and that suffices to prove delivery.  This is so for several reasons.  First, the statute says nothing about delivery "at the project site," and we lack authority to rewrite a statute to include matter omitted by the legislature.  *See Stockton v. Offenbach*, 336 S.W.3d 610, 619 (Tex. 2011).

Second, the statute must be accorded a comprehensive and liberal construction due to its remedial nature.  *United Fire & Cas. Co. v. Boring & Tunneling Co. of Am.,* 321 S.W.3d 24, 28 (Tex. App.—Houston [1st Dist.] 2010, pet. denied); *Suretec Ins. Co. v. Myrex Indus.*, 232 S.W.3d 811, 816 (Tex. App.—Beaumont 2007, pet. denied).  To read into the ambit of "delivery" the requirement that delivery be made at the project site is to avoid the liberal construction we must afford the proviso.  That is, requiring delivery at the project site would mean that the prime contractor could not personally collect the material from the supplier, and that seems to be a rather ridiculous restriction.  Furthermore, the plain meaning of the word "delivered" connotes an act involving the bringing or handing over of something, *see Merriam-Webster's Collegiate Dictionary* 330 (11th ed. 2003), but not who performs that act or the location at which it occurs.  And, it is quite conceivable that supplies may be (if not often are) brought and handed over to the prime contractor by the vendor at the vendor's place of business.  So, we

6

reject the notion that the phrase "delivered for use" means that the items must actually be delivered to the project site by the entity seeking payment under § 2253.001. And, here, the record contains some evidence that the supplies for which Ready sought compensation were delivered to Reyes at Ready's facility and Reyes was a subcontractor for Bond on the project.[1] Accordingly, we overrule Bond's first issue since some evidence of record illustrates delivery.[2]

### *Remedy*

Bond next contends that the trial court erred in creating a private cause of action from § 2253.024(e) of the Government Code. According to the trial court, when a primary contractor violates that statute, a cause of action arises in favor of the entity supplying public work material, and under that cause, the supplier "is liable for all consequential damages for failure to provide the payment bond information." Furthermore, the "[c]onsequential damages [for which Bond was liable] include[d] all invoices that . . . [were] not paid for which a payment bond would have been timely asserted had Bond Restoration timely provided the information as requested." We sustain the issue.

---

[1] The evidence about Reyes being a subcontractor for Bond on the project could be viewed as inadmissible hearsay. Yet, no one objected to its admission. Thus, we cannot deny it probative value. TEX. R. EVID. 802 (stating that inadmissible hearsay admitted without objection cannot be denied probative value merely because it is hearsay).

[2] Assuming *arguendo* the existence of an actual public works contract between Bond and the City of Houston, we found absolutely no evidence of record that the supposed contract exceeded the $50,000 threshold required by § 2253.021(a)(2)(B) of the Texas Government Code. So too did that prerequisite go unmentioned in the trial court's findings of fact and conclusions of law. This circumstance would be problematic if preserved by Bond; it would have established that the statute upon which Ready based its claim did not apply. Nonetheless, Bond failed to encompass the matter within a point of error or issue. And, we are prohibited from reversing a judgment on unassigned error. *Pat Baker Co. v. Wilson*, 971 S.W.2d 447, 450 (Tex. 1998).

"When a private cause of action is alleged to derive from a constitutional or statutory provision, our duty is to ascertain the drafters' intent." *Brown v. De La Cruz*, 156 S.W.3d 560, 563 (Tex. 2004). That requires us to look at the plain language of the statute. *Denton County Elec. Coop., Inc. v. Hackett*, 368 S.W.3d 765, 781 (Tex. App.— Fort Worth 2012, pet. denied). And, that language must clearly imply one. *See Brown v. De La Cruz*, 156 S.W.3d at 563 (stating that in the *City of Beaumont v. Bouillion,* 896 S.W.2d 143 (Tex. 1995), "we held that the Texas Constitution created a private action for damages only if the language of the specific provisions involved clearly implied one.").

Section 2253.024 of the Government Code creates a statutory duty to provide certain information. The duty can run from the prime contractor to one who provided public work labor or materials. *See, e.g.*, TEX. GOV'T CODE ANN. § 2253.024(a) (West 2008) (stating that a prime contractor, "on the written request of a person who provides public work labor or material . . . shall provide to the person . . . the name and last known address of the governmental entity with whom the prime contractor contracted for the public work; . . . a copy of the payment and performance bonds for the public work, including bonds furnished by or to the prime contractor; and . . . the name of the surety issuing the payment bond and the performance bond and the toll-free telephone number maintained by the Texas Department of Insurance . . . for obtaining information concerning licensed insurance companies"). Or, it can run from a subcontractor to a governmental entity, the prime contractor, a surety, or a person providing work under the subcontract. *See id.* § 2253.024(b) (stating that a subcontractor upon written request "shall provide to the person requesting the information . . . the name and last

8

known address of each person from whom the subcontractor purchased public work labor or material, other than public work material from the subcontractor's inventory; . . . the name and last known address of each person to whom the subcontractor provided public work labor or material; . . . a statement of whether the subcontractor furnished a bond for the benefit of its subcontractors and materialmen; . . . the name and last known address of the surety on the bond the subcontractor furnished; and . . . a copy of that bond.").

So too did the legislature specify the time within which the information must be provided. *See id.* § 2253.024(c) (stating that "[i]nformation requested shall be provided within a reasonable time but not later than the 10th day after the receipt of the written request for the information."). The legislature also allowed the person from whom the information was requested the right to "require payment of the actual cost, not to exceed $25, for providing the . . . information . . . if the person does not have a direct contractual relationship with the person requesting the information. . . ." *Id.*

Finally, those drafting § 2253.024 included within it a penalty for the failure to provide the requisite information. That penalty appears in § 2253.024(e) wherein the legislature stated that a "person who fails to provide information required by this section is liable to the requesting person for that person's reasonable and necessary costs incurred in getting the requested information." TEX. GOV'T CODE ANN. § 2253.024(e) (West 2008).

From the foregoing provisions, we perceive the creation of a statutory duty coupled with liability for its breach. So, it can be said that the legislature intended to create a cause of action permitting some measure of relief. Yet, nothing was said in the

statute about the relief encompassing consequential damages. Rather, it described the recovery simply as the reasonable and necessary costs incurred in obtaining the desired information. This limitation is of import, as we will illustrate.

In *City of Beaumont v. Bouillion*, 896 S.W.2d 143 (Tex. 1995), our Texas Supreme Court had the chance to determine whether the Texas Bill of Rights created a private right of action for damages. While analyzing the matter, it observed that "the text of the . . . Bill of Rights cuts against an implied private right of action for damages sought because it explicitly announced the consequences of unconstitutional laws." *Id.* at 148. The consequence alluded to was the avoidance of the law; that is, laws enacted in violation of the Bill of Rights are void. *Id.* at 148-49. And, voiding the law "is different from seeking compensation for damages, or compensation in money for a loss or injury." *Id.* at 149. It further rejected the notion that a private cause of action for damages must be contemplated within the Bill of Rights because Article 1, § 17 of the Texas Constitution encompassed the payment of adequate compensation for property taken, damaged, destroyed or applied to public use by the government. Though the text of the law entitled one who suffered such a taking to relief, it "provide[d] a textual entitlement to compensation in its limited context," and "this language . . . [could not] be interpreted beyond its context." *Id.* at 149. From this discussion by our Supreme Court, we learn that because the Bill of Rights provided for a remedy, one could not imply that the individuals drafting those laws also intended to create another remedy in the form of a private cause of action for damages. And, that analysis and conclusion controls here.

Like the Bill of Rights and Article 1, § 17 of the Texas Constitution, § 2253.024(e) specified a particular remedy for the breach of duty created by the statute. As

previously mentioned, that remedy was and is limited to the recovery of reasonable and necessary costs incurred in obtaining the desired information. The legislature having created a remedy for the failure of a prime contractor to provide the requisite information, it did not intend to also create within § 2253.024 a private cause of action for consequential damages caused by the breach.

This is not to say that those in the position of Ready lack alternative means of securing payment for outstanding debt. It is clear that the McGregor Act is not the exclusive means of redress available to one who provided public work labor or material for a public works project. *Dealers Elec. Supply Co. v. Scroggins Const., Co., Inc.*, 292 S.W.3d 650, 655 (Tex. 2009) (stating that the "history of the McGregor Act, as well as the case long cited for the Act's exclusivity -- *South Texas Lumber*, 29 S.W.2d 1009 -- clarify that the McGregor Act was intended to be a public-work laborer or materialman's exclusive claim only as against the payment bond itself, but not necessarily against contractors on a public-work project.").[3] Yet, it is the exclusive means of recovery provided for claims asserted against the bond, *id.*, and § 2253.024 encompasses the manner by which a public work laborer or materialman can obtain information to assert a claim against the bond. We choose not to adopt Ready's position and mutate procedures created to impose liability upon a bond into procedures to impose personal liability upon a prime contractor for consequential damages when the legislature has eschewed that mutation. In sum, the trial court erred in implying a private cause of

---

[3] *See, e.g., Corpus Christi v. Acme Mechanical Contractors, Inc.*, 736 S.W.2d 894, 898 (Tex. App.—Corpus Christi 1987, writ denied) (involving recovery via quantum meruit and noting that "[a]s a general rule, in the absence of an express contract making the owner liable, the compensation of persons who perform labor for or furnish material to a prime contractor is to be paid by the prime contractor. . . .").

action for damages under § 2253.024(e) and awarding Ready damages against Bond via that cause of action.

Having sustained Bond's last issue, we reverse the judgment of the trial court. Because Ready sought recovery solely for consequential damages under the purported private cause of action, we render judgment denying Ready Cable, Inc. recovery against Bond Restoration, Inc.

Brian Quinn
Chief Justice
